Rudolph L. Tanner et al., appellants,

*v.*

Boynton Lumber Company, respondent.

[Decided May 20th, 1929.]

On appeal from an order of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"One Evans, a subcontractor under the original contractor, undertook to build a dwelling house for complainants Tanner as owner. Defendant furnished Evans with the lumber and mill work for the house, and failing to receive due payment from Evans, filed a mechanics' lien claim and brought suit thereon against Evans as contractor and the Tanners as owner, in the Union county circuit court. The complainant alleged the sale by the lumber company of the materials (itemized in a bill of particulars annexed) to Evans for use in the building and that they were so used by him.

"The Tanners filed affidavit of merits and an answer which averred lack of knowledge or information sufficient to form a belief, as to the allegations of sale, furnishing and use. It denied that the alleged debt was a lien on their premises. Evans filed no answer.

"The lumber company then filed affidavits in detail in support of its allegations and moved to strike out the answer as frivolous and sham. One of the affidavits was by Evans, the contractor. The Tanners filed counter affidavits, but none denying any of the allegations as to the supplying or use of the materials. On the argument the answer was stricken out by the supreme court justice who heard the motion, and rule granted for judgment.

"The judgment was appealed by the Tanners, and affirmed by the court of errors and appeals.

"Evans had given a chattel mortgage to the lumber company, as security, and the Tanners filed bill in equity against Evans and the lumber company in an effort to obtain some interest in this security. The bill was dismissed as to the lumber company, but proceeded to the taking of proofs against Evans. In the course of these proofs Evans testified to certain facts which were contradictory to certain facts in his affidavit in the mechanics' lien suit, and which would tend to prove that the lumber company had furnished no materials for the Tanner house on the last date specified in its bill of particulars. If no materials had been so furnished on that date, the lumber company would have been out of time and could have had no lien.

"The Tanners then filed the present bill, setting forth the foregoing facts, and charging that the affidavits of Evans, and also an affidavit of one Catherine Nagel in the mechanics' lien suit, were false and fraudulent, and that without them the judgment in the mechanics' lien suit could not have been validly entered; alleging also that the facts had been brought to the attention of the lumber company; that the lumber company had issued execution on the mechanics' lien judgment, and refused to refrain from enforcing it. Complainants charge that such enforcement would be unconscionable and fraudulent (at least constructively) and pray injunction against the prosecution of the execution and judgment.

"The record in this suit shows that motion was made for injunction *pendente lite,* and a counter-motion to strike out the bill—both of which were denied. Appeal was taken from

the order denying the injunction *pendente lite,* and it was stated by counsel at the hearing in this case that application to stay the execution was made to and denied by the court of errors and appeals, and that at the suggestion of that court the judgment was then paid under protest and this suit continued with as a suit to recover (because of the alleged fraud) the amount so paid. Of course before any such decree could be made herein, supplement would have to be filed to the bill.

"The answer denies that any of the affidavits in the mechanics' lien suit were fraudulent, and also sets up that the issue is *res adjudicata* by the judgment in that mechanics' lien suit.

"The latest item in the mechanics' lien bill of particulars is March 8th, 1924, for seven 'flush sanitary doors' and one glazed sash door.

"The complaint alleged that these materials (with others on earlier dates) were 'furnished to and used by [the contractor] Evans, in the erection and construction of the building.' The answer denied knowledge or information on this point.

"The affidavits of the lumber company on its motion for summary judgment were—as to this point—those of Catherine Nagel and of Evans. Miss Nagle swore that she was bookkeeper for the lumber company and familiar with its books; and that all the materials in the bill of particulars 'were furnished to and used by Evans in the erection and construction of said [Tanner's] building.' Evans swore that the lumber company 'furnished and delivered to me, and I used in the erection and construction of said [Tanner] building,' all the materials at the times set forth in the bill of particulars. There were no other affidavits on this point— (except one by Mr. Dey as to what Evans had told him, which would seem hearsay and incompetent as against the Tanners, and in any event rested solely upon Evans, and added nothing to Evans' own affidavit).

"The complainants' bill alleges that these affidavits were 'false and fraudulent with respect to the item of March 8th,

1924.' (This item, as has already been said, specified six 'flush sanitary doors' and one glazed panel door; and the item is vital, because without it the lumber company would have been out of time with its lien claim and suit and could not have gotten any judgment against the Tanners.) To prove this allegation the Tanners offered certain evidence in the present suit.

"Tanner testified that all the doors in his house were hung and in place before March 1st, 1924; and that none of them were flush sanitary doors.

"The report of the master, in the suit as to the chattel mortgage, with the deposition of Evans annexed, was offered in evidence. In this deposition Evans testified that the doors in the Tanner house were all hung by March 1st, 1924, and that all the interior doors were 'one-panel doors.'

"For the lumber company Mr. Boynton produced the order from Evans to the company for the flush doors, and the lumber company's order to the door-makers for those doors, and testified that these were the doors that were delivered on March 8th; and produced and offered the delivery receipt for them, signed by Evans. Millard Munn, driver for the Boynton company, testified that he delivered the doors at the Tanner house; that Evans signed the delivery slip; that the Tanner house was covered with sheathing; that Evans had several other jobs in the same vicinity, which the Boynton company delivered materials to; he could not identify the doors as to photographs of flush doors and one-panel doors which were shown him.

"Tanner then testified that his house was a brick house, and was not sheathed. This was not contradicted.

"Neither Evans nor Miss Nagle—or any other witnesses than those named—were called by either side.

"In considering this evidence, it must be remembered that the Evans deposition in the chattel mortgage suit was *ex parte* as to the Boynton Lumber Company—taken after the bill in that suit had been dismissed as to the lumber company—and hence is incompetent in this suit on the issue as to whether or not the Evans' affidavit in the mechanics'

lien suit was false and fraudulent. (It is admissible in this suit as being part of the information which was brought to the attention of the lumber company in the Tanners' endeavor to convince the lumber company that it could not equitably proceed to enforce the mechanics' lien judgment.)

"If the issue in the present suit were simply whether or not the doors in question had been actually used in the Tanner house, it would have to be conceded, I think, that on the weight of the evidence in this case, competent on that issue, the verdict would be that they were not so used. There is nothing in the evidence offered by the lumber company, which necessarily or even probably contradicts Tanner's testimony that they were not used in this house.

"But that is not the issue in this suit. The issue in this suit is whether or not the affidavits of Evans and Miss Nagle in the mechanics' lien suit were false and fraudulent. That is complainants' allegation, and it is incumbent upon them to prove it. In order to prove it, they must prove that the affidavits were untrue in fact, and were known by the affiants to be untrue when made. To prove that the affidavits were untrue in fact there is the sworn statement of one witness, Tanner (whose credibility is not attacked, but who is a party having a vital interest in the suit), that the doors were not used in his house, as against the sworn statements of the two affiants (both of whom may be said to have had some interest to be served by their affidavits, but the credibility of neither being attacked by any competent evidence in this suit), that the doors were used in Tanner's house. The weight of the evidence on this issue is against Tanner; and (if we should assume that the statements in the affidavits were untrue) there is no evidence that the affiants intentionally made false affidavits as against their having been honestly (even though perhaps carelessly) mistaken.

"Fraud must be proved; it is not to be inferred, except by *necessary* inference. The taking of a knowingly false affidavit is a criminal act; the presumption is against it, and that presumption must be overcome by convincing proof.

"Complainants argue that Miss Nagle, being a bookkeeper,

could not have had knowledge as to whether the doors were actually used in the house or not. It is true that ordinarily a bookkeeper would not have such knowledge, but it is perfectly possible that Miss Nagle might have had such knowledge. It was for complainant to prove that she did not have such knowledge.

"It is true that defendants did not offer Miss Nagle or Evans, or anyone else to testify in this suit that the doors were in fact used in the Tanner house—and it might be thought that their failure so to do would warrant an inference unfavorable to defendants. Not so. Even if we assume that defendants' proofs were not as strong as they might well have been expected to be, defendants were not required to do more than meet the proofs made by complainant. And it was open to complainant to call Evans and Miss Nagle if he thought their testimony would prove his allegation.

"Moreover, it appeared in the case that defendants believed it was not necessary for them to prove that the doors were actually used in the house; defendants believed it would be sufficient so long as it appeared that the doors were ordered and furnished for use in the house, even if they were not actually so used. This would also tend to negative any unfavorable inference from the failure to call Evans or Miss Nagle (if such inference could otherwise fairly be drawn against defendants).

"The complainants' proofs being thus insufficient to establish that the affidavits of Evans and Miss Nagle were false and fraudulent, it need scarcely to be said that there is of course no proof whatever that the lumber company was guilty of fraud in filing its claim or prosecuting its suit and obtaining its judgment.

"It is, however, further contended by complainant that even if the lumber company was guiltless of fraud in obtaining its judgment, it is unconscionable on its part to proceed with execution on that judgment after having had brought to its attention and knowledge that the affidavits of Evans and Miss Nagle were false and fraudulent.

"It may be assumed that if it were duly proven in this

suit that those affidavits were false and fraudulent, even though such falsity and fraud was not induced by, or participated in, or known by, the lumber company, that company would be enjoined from enforcing its judgment.

"It may even be assumed for the sake of argument that if it were proven in this suit—or if it appeared that it had elsewhere been proven—that the affidavits of Evans and Miss Nagle though not false and fraudulent were untrue in fact, the lumber company would likewise be enjoined.

"The difficulty with complainants' contention is that it has not been proven in this suit that the affidavits were either false and fraudulent or untrue in fact; neither has it been established that this has been proven elsewhere. The depositions in the chattel mortgage suit did not establish even that the affidavits were untrue in fact. It may be added that a reading of the entire deposition of Evans in that suit leaves the mind in doubt as to whether the chances that his statements there made are mistaken are not just as great as that his statements in the mechanics' lien suit are mistaken. He did not specifically say that the latter were untrue or mistaken—his attention was not called to those statements; and the entire character of the deposition leaves much to be desired from the standpoint of assurance in its accuracy and certainty.

"The result is that complainants' bill must be dismissed."

*Messrs. Wall, Haight, Carey & Hartpence,* for the appellant.

*Mr. Horace L. Allen,* for the respondent.

PER CURIAM.

The order appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, CAMPBELL, LLOYD, CASE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 12.

*For reversal*—None.